J-S44015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL GARCIA | : | |
| | : | |
| Appellant | : | No. 602 EDA 2022 |

Appeal from the PCRA Order Entered January 3, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004211-2018

BEFORE:   OLSON, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                        **FILED MAY 30, 2024**

Appellant, Daniel Garcia, appeals from an order entered on January 3, 2022 in the Criminal Division of the Court of Common Pleas of Montgomery County that dismissed his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

As we noted on direct appeal, Appellant's underlying convictions arose from an undercover drug investigation that commenced in 2018, following a fatal drug overdose.  ***See Commonwealth v. Garcia***, 2020 WL 6821631, *1 (Pa. Super. 2020) (non-precedential decision).  Our dispositional memorandum in that appeal summarized the historical facts as follows.

> On May 18, 2018, the Pottstown police received a call from a concerned citizen, with surveillance video, indicating that Appellant was selling drugs out of a white Chevy Astro van in front of a home located at 308 Diamond Street.  Brendon Stierheim was

---

[*] Retired Senior Judge assigned to the Superior Court.

brought to the Pottstown Hospital in a white Chevy Astro van on May 25, 2018, for a drug overdose. The vehicle registration obtained by the police listed the Chevy van as registered to Appellant with 308 Diamond Street as the registered address.

Detective Francis Rippert utilized a fake Facebook account under the name 'Amy Lynn' to contact Appellant. Appellant's Facebook profile was identified by the officer through specific posts that were associated with Appellant.

The initial contact made by 'Amy Lynn' occurred on June 1, 2018. A private Facebook message that referenced the overdose death of Stierheim was sent to Appellant. On June 2, 2018, Appellant responded *via* his Facebook account, referring to Stierheim as a "brother from another mother." 'Amy Lynn' responded on June 4, 2018[,] indicating that she and Stierheim would "party" together. Appellant informed 'Amy Lynn' that he was the boss of the operation, and suggested that he and 'Amy Lynn' hang out since he had "everything" to offer, indicating access to a variety of different drugs.

Appellant arranged with 'Amy Lynn' *via* a series of vague Facebook messages and text messages to provide her with the drugs in exchange for sex. 'Amy Lynn' requested that Appellant supply her with "D." In response, Appellant inquired if she would like "a bun," in reference to a bundle of heroin.[FN1] Appellant made it clear that 'Amy Lynn' did not need to pay for the drugs, as it was his intention to receive sex instead of money.

> [FN1] Detective Rippert testified that "D" represents dope, which indicated heroin, and that a "bun" is a bundle of heroin, which is typically 10 to 14 bags packaged together.

It was agreed upon that Appellant would pick up 'Amy Lynn' on June 4, 2018 at the Turkey Hill convenience store in Eagleville, as Appellant believed it to be 'Amy Lynn's' place of employment.

Appellant, in his white Chevy Astro van, arrived at the Turkey Hill at approximately 2:46 p.m. on June 4, 2018. Detective Rippert and four other detectives were parked in a lot across from the Turkey Hill, awaiting Appellant's arrival. From his position, Detective Rippert was able to observe Appellant driving the Astro van into the parking lot of the Turkey Hill.

As he approached the vehicle, Detective Rippert identified himself and directed Appellant not to move and to put his hands up. Appellant refused to put his hands up and reached underneath the passenger seat. In response, the officers detained him, placed him in handcuffs, searched him, and transported Appellant to the Lower Providence Police Department. The police found $4,501.88 in small denominations on Appellant's person.

Once Appellant was taken into custody, due to the public location of the vehicle and the possible dangers associated with the heroin/fentanyl Appellant was purporting to sell, the white Astro van was driven less than a minute away to the Lower Providence Police Department sally port. Once at the sally port the van was searched by police.

A search of Appellant's vehicle revealed a loaded 9mm pistol, an LG cellular telephone, a black backpack containing 33[5] bags of bundled heroin and fentanyl, a knotted baggie filled with methamphetamine, an assortment of pills, and assorted glassine baggies. A receipt dated June 2, 2018, for a Sentinel Storage locker was recovered from the vehicle as well.

The police prepared and executed search warrants of both Appellant's home at 308 Diamond Street and of the storage facility identified on the recovered receipt. Detective Rippert executed the warrant on the Sentinel storage locker. The officers recovered sandwich baggies, Narcan, unused syringes, empty pill capsules, digital scales, a gun cleaning kit, ammunition for several types of guns, and a gun belt, among other items, as a result of the search.

A team of police officers, including Detective James Lavin of the Montgomery County Detective Bureau, served and executed the warrant at Appellant's 308 Diamond Street residence. The items of significance recovered from the search were: a plastic bag containing a large amount of presumed methamphetamine, a second plastic bag containing white powder, a wallet with Appellant's driver's license, clear plastic baggies, a digital scale, and ledger sheets appearing to track money owed and earned.

*Garcia*, *supra* at *1-3 (cleaned up), *quoting* Trial Court Opinion, 12/19/2019, at 2-5.

Based on the foregoing, the Commonwealth charged Appellant with three counts of possession with the intent to distribute, three counts of simple possession of a controlled substance, and one count each of possessing drug paraphernalia, criminal use of a communication facility, and person not to possess a firearm. Appellant requested and obtained possession to represent himself before the trial court with the assistance of stand-by counsel. On July 15, 2019, the trial court denied Appellant's motion to suppress at the conclusion of a hearing. Appellant was found guilty on July 17, 2019 of the offenses listed above following a two-day jury trial.

On October 16, 2019, the trial court sentenced Appellant to an aggregate term of 10 to 20 years of incarceration. This Court affirmed Appellant's judgment of sentence on November 20, 2020. Appellant did not petition for allowance of appeal before our Supreme Court.

Appellant filed a timely, *pro se* petition under the PCRA on March 19, 2021. Thereafter, the court appointed counsel, who filed a **Turner/Finley**[1] no-merit letter. On November 18, 2021, the PCRA court issued notice under Pa.R.Crim.P. 907 that it intended to dismiss Appellant's petition without an evidentiary hearing. On January 3, 2022, the court granted counsel's motion

---

[1] Counsel seeking to withdraw from PCRA representation proceed under **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988).

to withdraw from representation and dismissed Appellant's petition for collateral relief. This timely appeal followed.[2]

Appellant asks us to consider whether direct appeal and PCRA counsel were ineffective in failing to challenge the denial of his suppression motion on July 15, 2019.[3] He relies on **Commonwealth v. Alexander**, 243 A.3d 177 (Pa. 2020) in advancing this claim. Appellant points out that, in **Alexander**, our Supreme Court re-asserted its view that "Article 1, Section 8 of the Pennsylvania Constitution allow[ed] for greater protection of [Pennsylvania]

_____

[2] Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925. The docket reflects that Appellant filed his *pro se* notice of appeal on February 17, 2022; however, there are no entries on the PCRA court's docket which confirm service of the January 3, 2022 dismissal order upon Appellant. **See** Pa.R.Crim.P. 114(C)(2)(c) (docket entries shall contain the date of service of a court order). In view of the circumstances, we shall treat this appeal as timely filed. **See Commonwealth v. Midgley**, 289 A.3d 1111, 1117 (Pa. Super. 2023) ("Where the trial court docket in a criminal case does not indicate service on a party or the date of service, we will not quash the appeal or require further proceedings. Rather, we will treat the time in which to take an appeal as never having started to run and treat the appeal as timely.").

[3] Appellant's claims are conclusory and poorly developed; hence, they are subject to waiver on this basis. **See Commonwealth v. McIntyre**, 2024 WL 1245688, *12 (Pa. Super. 2024) (conclusory and undeveloped arguments are waived). Moreover, we will not consider Appellant's freestanding claims alleging trial court error and police misconduct since these claims could have been raised on direct appeal, but were not, and are now deemed waived under the PCRA. **See Commonwealth v. Bond**, 819 A.2d 33, 40 (Pa. 2002) (claims of trial court error that could have been raised on direct appeal, but were not, are waived under Section 9544(b) of the PCRA). We have, however, elected to address, briefly, the claims centered upon the performance of direct appeal and PCRA counsel *vis-a-vis* Appellant's suppression motion, as the development of those issues has not substantially impaired or precluded our ability to undertake meaningful appellate review.

citizens [against] illegal search and seizure and afford[ed] a higher standard and expectation of privacy when dealing with one's personal property and possessions." Appellant's Brief at 10 (not paginated). *Alexander* overruled *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014), which applied, without limitation, the federal automobile exception to the warrant requirement of the Fourth Amendment. *See Alexander*, 243 A.3d at 180-181. Relevant to the issue raised by Appellant, *Alexander* reaffirmed prior Pennsylvania decisions which declared that the Pennsylvania Constitution required both a showing of probable cause and exigent circumstances to justify a warrantless search of an automobile. *Id.* Appellant argues that, under the circumstances of this case, police investigators had reason to anticipate the need for a warrant to search his automobile since they arranged the time and place for his apprehension and arrest. *See* Appellant's Brief at 11. Appellant also contends that any exigency ceased once the police obtained exclusive possession of his vehicle, placed him under arrest, and removed his vehicle from a public location. *See id.* For these reasons, Appellant complains that the search of his vehicle was unlawful under the standards adopted in *Alexander*.

Our standard of review is as follows:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not

be overturned absent an abuse of discretion. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a de novo standard of review to the PCRA court's legal conclusions[.]

***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015) (citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

"[C]ounsel is presumed effective, and [the appellant] bears the burden of proving otherwise." ***Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014), *quoting* ***Commonwealth v. Steele***, 961 A.2d 786, 796 (Pa. 2008). To prevail on an ineffectiveness claim, an appellant must establish:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

***Commonwealth v. Lesko***, 15 A.3d 345, 373–374 (Pa. 2011), *citing* ***Commonwealth v. Pierce***, 527 A.2d 973, 975 (Pa. 1987).

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. ***See Commonwealth***

- 7 -

*v. Jones*, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim ..., he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

Appellant argues that direct appeal counsel and PCRA counsel should have challenged the trial court's suppression ruling by citing the decision in *Alexander*, but he concedes that the *Alexander* decision "was not available at the time of Appellant's hearing on his motion to suppress[.]" Appellant's Brief at 11. In fact, our careful study of the certified record reveals that, although the *Alexander* decision was filed on December 22, 2020, Appellant's judgment of sentence became final on Monday, December 21, 2020, which was 31 days after we affirmed Appellant's judgment on November 20, 2020 and when the time for filing a petition for allowance of appeal to the Supreme Court had expired. *See* 1 Pa.C.S.A. § 1908 (omitting Saturday and Sunday

from time computation); Pa.R.A.P. 1113(a) (allowing petition for allowance of appeal to be filed within 30 days of entry of final order by Superior Court). Thus, as a technical matter, Appellant's judgment had become final and he was no longer on direct appeal when our Supreme Court filed its decision in **Alexander**.

It is well settled that Pennsylvania courts will not deem counsel ineffective for failing to raise issues that challenge controlling law. **See Commonwealth v. Dennis**, 950 A.2d 945, 978 (Pa. 2008) ("[W]e will not hold trial counsel ineffective for failing to anticipate a change in the law"). Moreover, where "an appellate decision overrules prior law and announces a new principle," the new rule may be applied only in cases that remain pending on direct appeal at the time, assuming the issue has been properly preserved throughout the litigation and further assuming the new decision has not been specifically and exclusively reserved for prospective application only. **See Commonwealth v. Hays**, 218 A.3d 1260, 1266 (Pa. 2019), *quoting* **Commonwealth v. Cabeza**, 503 Pa. 228, 469 A.2d 146, 148 (1983); **see also Commonwealth v. Olson**, 179 A.3d 1134, 1139 (Pa. Super. 2018) (noting general rule that only a party whose case remains pending on direct appeal is entitled to benefit of newly announced rule of law).

In this case, neither trial nor direct appeal counsel could be declared ineffective for failing to advocate a principle that was contrary to prevailing Pennsylvania law. Hence, neither direct appeal counsel nor PCRA counsel could be deemed ineffective for failing to challenge the performance of a

predecessor. Moreover, Appellant was never eligible to receive the benefit of *Alexander* since his direct appeal concluded, and his judgment of sentence became final, before our Supreme Court issued its decision. Thus, the PCRA court correctly determined that Appellant was not entitled to relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2024